UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

THOMAS ALSTON,
CAREY VAUGHN,
TAVARIS PITTMAN,
SHAWANDA PITTMAN and
BRANDON PITTMAN,

    Plaintiffs,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,
SETERUS, INC. and
SERVICELINK FIELD SERVICES, LLC,[1]

    Defendants.

Civil Action No. TDC-17-2938

## MEMORANDUM OPINION

Self-represented Plaintiffs Thomas Alston, Carey Vaughn, Tavaris Pittman, Shawanda Pittman, and Brandon Pittman (collectively, "Plaintiffs") have filed this action against Defendants Federal National Mortgage Association ("Fannie Mae"), Seterus, Inc. ("Seterus"), and ServiceLink Field Services, LLC ("ServiceLink"), alleging trespass and conversion arising from an unauthorized entry onto a residential property and the removal of personal property belonging to each of the Plaintiffs. Presently pending before the Court is a Motion to Dismiss filed by Fannie Mae and Seterus (collectively, "the Moving Defendants"). Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

---

[1] The case caption originally named "ServiceLink Field Services" as a Defendant. The Clerk shall amend the docket to reflect the correct name, "ServiceLink Field Services, LLC."

## BACKGROUND

Curtis Ross, a non-party in this case, owns a residential property located at 12603 Old Chapel Road, Glenn Dale, Maryland ("the Property"), which is subject to a mortgage loan ("the Mortgage"). The Mortgage is owned by Fannie Mae and serviced by Seterus. The Mortgage is subject to a Deed of Trust, which allows for entry onto the Property by Fannie Mae or its agents:

> Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Deed of Trust ¶ 7, Joint Record ("J.R.") 8, ECF No. 37.[2] The Deed of Trust further provides that in the event of a "legal proceeding that might significantly affect [the] Lender's interest in the Property and/or rights under this Security Instrument," "[a]ny amounts disbursed by Lender . . . shall become additional debt of Borrower secured by this Security Instrument." *Id.* ¶ 9, J.R. 8-9.

According to Plaintiffs, Ross allowed Alston and Vaughn to store "work material and equipment" on the Property, including personal property and "work material and equipment relating to [a] real estate investment business" and a "real estate contractor business." Am. Compl. ¶¶ 13-17, ECF No. 21. Separately, Ross rented the Property to Tavaris and Shawanda Pittman beginning in early 2017.

In February 2017, Seterus instructed ServiceLink to enter the Property. ServiceLink entered the Property and removed "work material and equipment" and unspecified "personal property" belonging to Plaintiffs. *Id.* ¶ 28. The Amended Complaint alleges that ServiceLink "broke into" the Property, stole Plaintiffs' property, and "changed all the locks," presumably

---

[2] The Court takes judicial notice of the Deed of Trust as it is a public record filed in the land records of Prince George's County, Maryland. Fed. R. Evid. 201(b)(2); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that a court may take judicial notice of matters of public record).

referring to a house or structure on the Property. *Id.* ¶ 38. No Defendant provided advanced notice of these actions. At the time of the intrusion, Ross was not in default on the mortgage.

On August 14, 2017, Plaintiffs, along with Ross, filed a *pro se* lawsuit in the Circuit Court for Prince George's County, Maryland, but the Complaint was signed by Alston only. On September 1, 2017, Alston sent a copy of the summons and the Complaint to (1) Timothy J. Mayopoulos, the President of Fannie Mae; and (2) to "The Corp Trust," the registered agent for Seterus in Maryland, by United States Postal Service ("USPS") certified mail, a service that allows a sender to verify delivery of the item to its destination. *See Insurance & Extra Services*, United States Postal Service, https://www.usps.com /ship/insurance-extra-services.htm (last visited May 23, 2018); *Timothy J. Mayopoulos, President and Chief Executive Officer*, Fannie Mae, http://www.fanniemae.com/portal/about-fm/leadership/mayopoulos.html (last visited May 23, 2018); *Seterus, Inc.*, Maryland Business Express, https://egov.maryland.gov/ BusinessExpress/EntitySearch/BusinessInformation/F14047906 (last visited May 23, 2018).[3] Neither mailing was sent by USPS "Restricted Delivery," a separate service that allows a sender to restrict delivery to a specific individual. *See Insurance & Extra Services*, United States Postal Service, https://www.usps.com/ship /insurance-extra-services.htm (last visited May 23, 2018). Neither Alston nor any other Plaintiff filed a service affidavit or other proof of service.

Defendants removed this case to this Court on October 4, 2017. Since the original Complaint was signed by Alston only, the Court ordered Plaintiffs to resubmit the Complaint with signatures by all Plaintiffs. The Plaintiffs then filed an Amended Complaint signed by each Plaintiff with the exception of Ross, who was removed as a Plaintiff.

---

[3] The Court takes judicial notice of the roles of Mayopoulos and The Corp Trust, and the definitions of USPS certified mail and restricted delivery. *See* Fed. R. Evid. 201(b)(2).

## DISCUSSION

In their Motion to Dismiss, the Moving Defendants argue that (1) service of process was insufficient; (2) the Amended Complaint should be dismissed for failure to join Ross as a party; (3) Plaintiffs fail to allege sufficient facts to state a claim for trespass; and (4) Plaintiffs fail to allege sufficient facts to state a claim for conversion. In their Memorandum in Opposition to the Motion, Plaintiffs offer to file a Second Amended Complaint that would provide additional details on the allegedly stolen personal property.

### I. Legal Standard

To the extent that the Moving Defendants seek dismissal of the Amended Complaint on the basis of insufficient service of process, the Motion is construed as a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). In such a Motion, Plaintiffs bear the burden to demonstrate that service was adequate. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *Danik v. Housing Auth. of Balt. City*, 396 F. App'x 15, 16 (4th Cir. 2010) (citing *Dickerson*). In ruling on such a motion, the Court may consider evidence outside of the pleadings. *Urquhart v. Am.-La France Foamite Corp.*, 144 F.2d 542, 544 (D.C. Cir. 1944); *Blau v. Allianz Life Ins. Co. of N. Am.*, 124 F. Supp. 3d 161, 168 n.3 (E.D.N.Y. 2015).

The Moving Defendants' argument for dismissal for failure to join Ross as a necessary party is considered under Rule 12(b)(7). On such a motion, the Court may consider matters outside the pleadings, and the Moving Defendants, as the parties asserting this defense, have the burden to show that dismissal is warranted. *Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005); *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

The Moving Defendants' remaining arguments seek dismissal for failure to state a claim under Rule 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II. Service of Process

The Moving Defendants argue that the Complaint should be dismissed because Plaintiffs failed to file an affidavit of service and because they mailed the summons and a copy of the original Complaint to each Defendant via certified mail without requesting restricted delivery. The Moving Defendants also argue that the failure of all Plaintiffs to sign the original Complaint before it was served rendered service improper under any circumstances.

In cases removed from state court, "a federal court must apply the law of the state under which the service was made." *Allen v. Ferguson*, 791 F.2d 611, 616 n.8 (7th Cir. 1986). For service of a corporation or unincorporated association, Maryland law allows a copy of the summons and complaint to be sent to the "resident agent, president, secretary, or treasurer" of the organization via "certified mail requesting: 'Restricted Delivery—show to whom, date, address of delivery.'" Md. Rule 2-121(a); Md. Rule 2-124(d). Sending a copy of the summons and

complaint by certified mail, without requesting restricted delivery, is defective service even if the defendant receives actual notice of the suit. *See Quann v. Whitegate-Edgewater*, 112 F.R.D. 649, 653–54 (D. Md. 1986); *see also Steverson v. HSBC Auto Fin. Corp.*, No. DKC-10-3119, 2011 WL 1103164, at *4 (D. Md. Mar. 23, 2011). When service is made by certified mail, restricted delivery, the plaintiff must file proof of service by submitting the original return receipt, but the failure to make proof of service does not affect the actual validity of the service. Md. Rule 2-126(a)(3), (g).

Here, Plaintiffs mailed a copy of the summons and original Complaint by certified mail to the President of Fannie Mae and the registered agent of Seterus within 18 days of filing suit. Service was timely, included the necessary materials, and was sent to an individual authorized to accept service for each Defendant. However, Plaintiffs' failure to request restricted delivery renders the service defective for each Defendant. *See Quann*, 112 F.R.D. at 654.

When a court determines that service of process was insufficient, the Court has broad discretion to determine whether dismissal under Rule 12(b)(5) is warranted. *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Dismissal is generally inappropriate "when there exists a reasonable prospect that service may yet be obtained." *Id.* Although the "plain requirements for the means of effecting service of process may not be ignored," a "technical violation of the rule" or "a failure of strict compliance may not invalidate the service of process" when a Defendant has received actual notice of a case. *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

Here, the Court will not dismiss the case based on insufficient service of process. Although service was not effectuated by restricted delivery, which ensures delivery to the named addressee, neither Defendant has claimed that it did not receive actual notice of these

proceedings or articulated any prejudice arising from the failure to request restricted delivery. The fact that the Moving Defendants have retained counsel and are now defending this case does not establish prejudice arising from Plaintiffs' defective service. Likewise, the failure of certain Plaintiffs to sign the original Complaint identifies a defect unrelated to the requirements for service of process, had no impact on actual notice, and did not prejudice the Moving Defendants. *See Wenger v. PayPal, Inc.*, No. DKC-08-0855, 2008 WL 11367537, at *3 (D. Md. July 2, 2008) (finding that the argument that service was ineffective because a comparison copy between an original complaint and amended complaint was not included when the amended complaint was delivered was "meritless," as such procedural requirements did not violate Maryland's service of process requirements) (citing *Francz v. Francz*, 853 A.2d 839, 846 (Md. Ct. Spec. App. 2004)).

The fact that Plaintiffs are self-represented also weighs against dismissal. *See McCreary v. Vaughan-Bassett Furniture Co., Inc.*, 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005) stating that on the issue of service, "the court should allow a *pro se* litigant a certain amount of lenity that is not afforded to represented parties"); *see also Christ v. Mayor of Ocean City*, No. WMN-15-3305, 2016 WL 1117403, at *3 (D. Md. Mar. 21, 2016). The Court is mindful that Plaintiff Thomas Alston, while nominally a *pro se* party, is a frequent litigator in this District and should be very familiar with the requirements for proper service, including the need for restricted delivery and filing proof of service. *See, e.g., Alston v. Orion Portfolio Servs.*, No. PJM-16-3697, 2017 WL 784122, at *1 n.1 (D. Md. Mar. 1, 2017) (noting that Thomas Alston has filed at least 18 cases in this Court alleging violations of the Fair Credit Reporting Act). However, the remaining self-represented Plaintiffs have no such discernible track record. Because the violation was technical, and there was actual notice and no apparent prejudice to the Moving

7

Defendants, the Court declines to dismiss this case and deny the other self-represented Plaintiffs the opportunity to have their case decided on the merits. *See Armco*, 733 F.2d at 1089.

## III. Failure to Join a Required Party

The Moving Defendants next argue that the Amended Complaint should be dismissed under Rule 12(b)(7) for failure to join a required party, specifically, Ross. Under Rule 12(b)(7), a party may file a motion to dismiss "for failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). When considering such a motion, the court engages in a two-step inquiry. First, it must determine whether, under Rule 19, the absent party is "necessary to a proceeding because of its relationship to the matter under consideration." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Second, if the party is necessary but joinder would destroy jurisdiction over the case, the court must determine "whether the proceeding can continue in its absence, or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *Id.* "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Id.* at 441.

> Under Rule 19(a), a party is necessary to a case and must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>     (i) as a practical matter impair or impede the person's ability to protect the interest; or
>     (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The Court does not apply a "procedural formula" when determining whether a party is necessary, but makes a pragmatic decision "in the context of the substance of each case." *Home*

8

*Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014). For example, in *Home Buyers*, the United States Court of Appeals for the Fourth Circuit held that several contractors involved in the construction of a home were necessary parties to a suit brought by a homeowner for construction defects in the home, because a warranty on the home made the contractors liable for the defects, there was a parallel state case in which the contractors were joined as parties, and a proper determination of liability for the defects required the participation of the contractors. *Id.* at 434-35.

Here, the Moving Defendants argue that Ross is a necessary party because he was a party to the original Complaint; he is still referenced, including as a named plaintiff, in the Amended Complaint; and he is the owner of the Property. The Moving Defendants also claim that Ross has a pecuniary interest in the outcome of this case because their litigation expenses may be charged to him under the terms of the Deed of Trust, which provide that in the event of a "legal proceeding that might significantly affect [the] Lender's interest in the Property and/or rights under this Security Instrument," "[a]ny amounts disbursed by Lender . . . shall become additional debt of Borrower secured by this Security Instrument." Deed of Trust ¶ 9, J.R. 8-9.

The Court does not find these arguments persuasive. First, while inartfully drafted, the fact that Ross is still referred to as a named plaintiff in the body of the Amended Complaint does not mean that he must be included as a necessary party. The Amended Complaint's assertions about Ross, such as that he is the owner of the Property, he authorized Plaintiffs to store items there, and he did not receive notice of an entry by Seterus, establish that he is a witness in the case, not that he is a necessary party. Notably, the ownership of the Property is not at issue in this case, nor is Defendants' right to make entries onto the Property under the terms set forth in the Deed of Trust; rather, Plaintiffs merely seek compensation for alleged torts committed by

9

Defendants by entering the Property without written notice and removing Plaintiffs' possessions. Thus, this case will not significantly affect Defendants' "interest in the Property" or "rights" under the Deed of Trust such that Ross would be liable for Defendants' costs in defending this lawsuit. *Id.* Unlike in *Home Buyers Warranty*, there is no parallel state litigation that could subject the parties to inconsistent results, and Defendants can provide complete relief to Plaintiffs, in the form of damages, without Ross's participation as a party. Accordingly, the Court finds that Ross is not a necessary party and declines to dismiss the case on this ground.

### IV. Trespass

In Count I, Plaintiffs allege that the Moving Defendants caused ServiceLink to trespass on the Property. Under Maryland law, a trespass occurs when "a defendant interferes with a plaintiff's interest in the exclusive possession of the land by entering or causing something to enter the land." *Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 189 (Md. 1994). To state a claim for trespass, a plaintiff must establish "(1) an interference with a possessory interest in his property; (2) through the defendant's physical act or force against that property; (3) which was executed without [the plaintiff's] consent." *Mitchell v. Baltimore Sun. Co.*, 883 A.2d 1008, 1014 (Md. Ct. Spec. App. 2005). The alleged trespasser does not need to cause any actual damage to the property; nominal damages may be recovered for any unauthorized entry. *Tyler v. Cedar Island Club*, 122 A. 38, 39 (Md. 1923).

The Moving Defendants do not dispute that they caused ServiceLink to enter on to the Property, or that Plaintiffs have a possessory interest in the Property. Rather, the Moving Defendants argue that the Deed of Trust provided consent for ServiceLink's entry by permitting "Lender or its agent [to] make reasonable entries upon and inspection of the Property." Deed of Trust ¶ 7, J.R. 8. Plaintiffs do not dispute that Fannie Mae owns the Mortgage or that Seterus

and ServiceLink were acting as its agents. However, the Deed of Trust distinguishes between entries onto "the Property" and inspections of "the interior of the improvements of Property," presumably referring to a house or other structure. *Id.* Although the Deed of Trust authorizes "reasonable" entries upon and inspections of the Property at any time, inspections of the interior of improvements on the Property require both "reasonable cause" and written notice to Ross describing such reasonable cause, either prior to or at the time of entry. *Id.*; Deed of Trust ¶ 15, J.R. 11 (stating that all notices in connection with the Deed must be in writing).

If Plaintiffs had alleged that the Moving Defendants had trespassed merely by crossing the property line, without entering any structure, that claim might fail because the Deed of Trust appears to authorize such entry, particularly where Plaintiffs have not alleged that ServiceLink's entry onto the land itself was unreasonable. *See Moseley v. CitiMortgage Inc.*, No. C11-5349RJB, 2011 WL 5175598, at *10 (W.D. Wash. Oct. 31, 2011) (finding, on a motion for summary judgment, that repeated entries onto a plaintiff's property to place notices on a doorknob were reasonable under the same contractual language present here); *Beatty v. BAC Home Loans Servicing, LP*, No. RDB-10-2229, 2011 WL 2516394, at *3 (D. Md. June 21, 2011) (finding, on a motion for summary judgment, that two "drive-by inspections" by a defendant loan servicer were reasonable under same contractual language). However, Plaintiffs also allege that ServiceLink "broke into the Property" and "changed all the locks," without providing notice to Ross. Am. Compl. ¶¶ 22, 26, 38. Read in the light most favorable to Plaintiffs, this allegation asserts that ServiceLink entered a structure on the Property, which is not authorized by the Deed of Trust absent written notice. Plaintiffs have therefore stated a plausible claim of trespass. *See Webb v. Green Tree Servicing, LLC*, No. ELH-11-2105, 2011 WL 6141464, at *9-10 (D. Md. Dec. 9, 2011) (denying a motion to dismiss a trespass claim because a factfinder could conclude

that a defendant who had allegedly peered through the windows of a home had not engaged in a reasonable entry onto the property). Accordingly, the Court will deny the Motion to Dismiss as to Count I.

## V. Conversion

In Count II, Plaintiffs assert a claim of conversion against the Moving Defendants for allegedly entering the Property and intentionally removing personal property belonging to each Plaintiff without legal justification. Under Maryland law, conversion involves any distinct act of dominion or control "'exerted by one person over the personal property of another in denial of his right or inconsistent with it.'" *Allied Inv. Corp. v. Jasen*, 731 A.2d 957, 963 (Md. 1999) (quoting *Interstate Ins. Co. v. Logan*, 109 A.2d 904, 907 (Md. 1954)). Conversion can occur "either by initially acquiring the property or by retaining it longer than the rightful possessor permits." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.3d 828, 835 (Md. 2004). By alleging that Defendants entered into a home and removed Plaintiffs' personal property without legal justification, Plaintiffs have sufficiently alleged the necessary elements of a claim for conversion.

However, the Court finds that the Amended Complaint fails to provide adequate notice to Defendants of Plaintiffs' claim. While it is not necessary to provide an overly detailed explanation of the factual basis for a claim, *see* Fed. R. Civ. P. 8(a)(2), the Amended Complaint must "provide the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Here, Plaintiffs describe their personal property in extremely broad terms such as "work material and equipment relating to [a] real estate contractor business" and "personal property . . . unrelated to [a] real estate contractor

business." Am. Compl. ¶¶ 16-17. These categories are so vague that they provide no practical notice to Defendants of what was allegedly stolen. In their Opposition to the Motion, Plaintiffs offered to amend the Complaint to include "details of what personal property and work equipment was stolen by Defendants." Opp'n Mot. Dismiss at 10, ECF No. 35. The Court will therefore grant the Motion as to Count II, but will give Plaintiffs leave to file a Second Amended Complaint that includes a specific description of the personal property allegedly taken by Defendants, the specific locations from which the personal property was taken, and the specific Plaintiff to whom the personal property belonged. No further amendments will be permitted absent exceptional circumstances.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED as to Count II, but Plaintiffs may file a Second Amended Complaint within 14 days of the date of the accompanying Order in which they may re-assert Count II with more specific information about the personal property allegedly taken by Defendants. The Motion is otherwise DENIED.

Date: June 12, 2018

THEODORE D. CHUANG
United States District Judge